# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **IN RE**: | ) | **CHAPTER 7** |
| | ) | |
| **BRIAN CHRISTOPHER CARR** | ) | |
|    Debtor. | ) | **CASE NO. 16-71500** |

___

| | | |
|---|---|---|
| **CLARA J. REED PENCE** | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 17-07006** |
| | ) | |
| **BRIAN CHRISTOPHER CARR** | ) | |
|    Defendant. | ) | |

___

## MEMORANDUM OPINION

Brian Christopher Carr ("Debtor" or "Carr") filed a Chapter 7 bankruptcy case in this Court on November 14, 2016. The Debtor listed the Plaintiff herein, Clara J. Pence ("Pence"), as an unsecured creditor on Schedule E/F with a claim in the amount of $9,638.40 based on a civil judgment arising from a landlord-tenant dispute. According to the Warrant in Debt filed in the Floyd County, Virginia General District Court by Pence, a default judgment was obtained on November 21, 2013 against Carr for unpaid rent and "vanderlism [sic]" of mobile home interior. On January 26, 2017, Pence commenced this Adversary Proceeding by filing a Complaint objecting to the dischargeability of the debt owed by the Debtor. At issue is whether the costs of repair of damages to a rental mobile home are excepted from discharge under 11 U.S.C. § 523(a)(6). On September 8, 2017, the Court conducted a full evidentiary bench trial; at the conclusion of which, the Court took the matter under advisement.[1] The parties filed post-trial

---

[1] At the close of Plaintiff's case, the Debtor moved for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). The Debtor's argument was substantially the same as that set forth in the post-trial briefs. The

briefs in support of their positions and this matter is ripe for decision. This Memorandum Opinion sets forth the Court's findings of fact and conclusion of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

## Jurisdiction and Venue

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

## Factual Background

At the time this dispute arose, Pence owned a mobile home located at 7861 Deer Run Drive, S.E., Copper Hill, Virginia. Pence entered into a Rental Agreement with the Debtor and Debtor's then girlfriend, Brandy Carr a/k/a Brandy Pettit ("Pettit"), on August 15, 2011. (Pence's Exhibit 2). As co-tenants, Debtor and Pettit took possession of the property on August 13, 2011, two days prior to the beginning of the lease, with the permission of Pence to finish hanging the blinds and make minor repairs in the small bedroom. At some point during the lease term, Debtor and Pettit began having domestic issues resulting in Pettit and their young child periodically leaving and returning to the property.

---

Court took the Debtor's motion under advisement, upon which it now declines to rule having entered a final judgment after hearing all the evidence. See Fed. R. Bankr. P. 7052(c).

[2] Federal Rule of Bankruptcy Procedure 7052 is made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014. See Fed. R. Bankr. P. 9014. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Due to non-payment of rent, Pence and her daughter, Sandra Reed, conducted a move out inspection on September 8, 2013, and they documented extensive damage to the mobile home. According to Sandra Reed, among other things, the ceiling fan in the living room was broken, there were holes in the ceiling resembling "fist marks," and the glass divider between the living room and kitchen was broken.  The carpets had cigarette burns and bleach spots, and there was a strong odor of a cat's presence.  When the carpet and flooring were removed, significant water damage was uncovered. The flooring had to be replaced because it was deteriorated beyond use. Pence testified and provided detailed documentation that she paid $12,982.64 for repairs to the mobile home.

Subsequently, the Debtor was arrested on October 15, 2013 on an unrelated matter, and the Debtor's stepfather testified that the Debtor's mother and stepfather actually removed his personal property from the leased premises and cleaned the premises after Debtor's arrest.  Pence subsequently brought an action in the Floyd County, Virginia General District Court for unpaid rent and property damage to the mobile home. A default judgment was entered in favor of Pence and against the Debtor in the amount of $8,238.61, with interest at the rate of 6% plus costs of $70.00. At the trial in this case, the Debtor testified that he was never served with the Warrant in Debt because he was incarcerated at the time of service of the warrant in debt and Brandy Pettit, contrary to Pettit's representations to Pence, was not his wife or otherwise a member of his family who could, under Virginia law, properly accept service of process on his behalf.[3]

In this adversary proceeding, Pence seeks a determination that the property damages are non-dischargeable under 11 U.S.C. § 523(a)(6), as debts "for willful and malicious injury by the

---

[3] Although Pence makes reference to the doctrine of collateral estoppel in her Complaint, likely due in part to the questionable service, this argument was not advanced or argued at trial or in the post-trial briefs, and the Court will deem it waived.

3

debtor to another entity or to the property of another entity." As a basis for relief, Pence contends that such damage far exceeds ordinary wear and tear or damage caused by negligent or reckless acts, but was, rather, the result of willful and malicious injury to Pence and/or the property.

## Discussion

For a debt to be found non-dischargeable under 11 U.S.C. § 523(a)(6), the creditor must establish by a preponderance of the evidence that the debtor's actions in incurring the debt were willful and malicious and that those actions led to injuries to the creditor's person or property. *Kawaauhau v. Geiger*, 523 U.S. 57, 60–61 (1998). Thus, there are three elements that must be proven: (1) that the debtor's actions caused an injury to the creditor's person or property; (2) that the debtor's actions were willful; and (3) that the debtor's actions were malicious. E.g., *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d. Cir. 1997) ("[E]xceptions to discharge are to be strictly construed in favor of the debtor."); *Leneski v. Smith (In re Smith)*, 2007 Bankr. LEXIS 4148, at *14 (Bankr. N.D. W. Va. Dec. 18, 2007). The creditor seeking a finding of nondischargeability must establish each of those three elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991).

The discharge exception in § 523(a)(6) is predicated on debts caused by willful and malicious debtor conduct and it reflects public policy concerns that may override the bankruptcy fresh start policy. Nonetheless, because the fresh start policy is so central to the operation of our bankruptcy system, the Supreme Court has held that willfulness under § 523(a)(6) requires a showing of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau*, 523 U.S. at 61 (emphasis in original).

The test is whether the debtor by the commission of an intentional tort that is "substantially certain to result in injury" is sufficient to satisfy the willfulness requirement. *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670 (Bankr. E.D. Va. 2001). Willful refers to a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *GMAC Inc. v. Coley (In re Coley)*, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010) (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). "[A]ctions taken for the specific purpose of causing an injury as well as actions that have a substantial certainty of producing injury are 'willful' within the meaning of § 523(a)(6)." *Coley*, 433 B.R. at 497 (internal citations omitted). In *Parsons v. Parks (In re Parks)*, 91 Fed.Appx. 817, 818–19 (4th Cir. 2003), the Court determined that "[t]he test, then, is whether the debtor acted with 'substantial certainty [that] harm [would result] or a subjective motive to cause harm.'" (quoting *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998)). In *Haas v. Trammell (In re Trammell)*, 388 B.R. 182, 187 (Bankr. E.D. Va. 2008), the Court applied the "objective substantial certainty" or "subjective motive to cause harm" test to satisfy the willfulness requirement.

The Fourth Circuit defines malice as "an act causing injury without just cause or excuse." *Ocean Equity Group, Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010) (quoting *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001) (citing *Branch Banking & Trust Co. of Va., Inc. v. Powers (In re Powers)*, 227 B.R. 73 (Bankr. E.D. Va. 1998))). "What is required is that plaintiff prove that [a] debtor's injurious act was done deliberately, intentionally and with knowing disregard for plaintiff's rights." *Davis*, 262 B.R. at 670-71 (internal citations omitted). "Malice does not mean the same thing for nondischargeability purposes under § 523(a)(6) as it does in contexts outside of bankruptcy." *Wooten*, 423 B.R. at 130 (internal citations omitted); see also *First Nat'l Bank v. Stanley (In re*

*Stanley)*, 66 F.3d 664, 667-68 (4th Cir. 1995). Rather, "[i]n bankruptcy, [a] debtor may act with malice without bearing any subjective ill will toward plaintiff or any specific intent to injure same." *Id*.

Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, those requirements may be inferred from the circumstances surrounding the injury at issue. E.g., *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985) ("Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under 11 U.S.C. § 523(a)(6)."). *In re Smith*, at *4.

A number of decisions have found that a debtor's failure to maintain rental property or collateral, without more, is not enough to support a claim of nondischargeability under § 523(a)(6). *Sparks v. King (In re King)*, 258 B.R. 786, 796–97 (Bankr. D. Mont. 2001) (debtor's/tenant's failure to keep a rented duplex in repair was the result of negligence, rather than an intention to injure the creditor/landlord); *Wells v. Jennings (In re Jennings)*, 188 B.R. 110, 114 (Bankr. E. D. N.Y. 1995) (even though the dangerous and unsafe condition of the debtor's property might have caused the fire that damaged a neighbor's property, the debtor was merely negligent in the care and maintenance of her property); *Mathes v. Woolner (In re Woolner)*, 109 B.R. 250, 255 (Bankr. E.D. Mich. 1990) (mortgagee's loss caused by the debtor's improper maintenance of his farm prior to foreclosure was not a debt arising from willful and malicious conduct; rather, the debtor's conduct was negligent). In each of these cases, the determining factor was the court's conclusion that the debtor's conduct was negligent, rather than intentional. Debts based on negligence are dischargeable. Debts based on willful and malicious conduct are not. *Geiger*, 523 U.S. at 64.

In this adversary proceeding, Pence seeks a finding of nondischargeability with respect to the debts that arose from damage to Pence's property. Since a person will rarely, if ever, admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury at issue. *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000). In the context of a landlord-tenant relationship we must look to the facts of the case to determine whether the record supports the conclusion that the damages caused by the Debtor raise to the level of willful and malicious injury. In this case, Pence's Exhibit 6 includes 64 pictures of the property as inspected on September 8, 2013 or thereafter showing damages alleged in this adversary proceeding. These include a scorched deck (Page 2), a broken light fixture (Page 6), hole-ridden walls and trim (Pages 8, 10, 12, 22, 24, 40), torn screens and blinds (Page 16), water-damaged ceilings (Pages 27, 28), damaged walls (Pages 30, 32), water-damaged floors (Pages 36, 48, 54, 59), damaged vinyl flooring (Page 37), damage caused by a leaking air conditioning unit (Page 39), discolored carpet (Page 43), a door with a large hole in the center (Page 47), damaged cabinetry (Page 57), and a yard with "donuts" caused by a vehicle (Page 64).

A substantial portion of the damage claimed to be non-dischargeable relates to water damage. Much of that damage is of a kind that can develop over time, and may not be open or obvious. As Pence testified, she was not aware of the water damage until the carpet was pulled up after the Debtor moved out. This was consistent with Pence's understanding that water came from various sources, including but not limited to a water spray under the house (most likely from a frozen pipe that burst), an over flowing washing machine, and a leaky dishwasher. Other than water damage under the sink, the Debtor testified he was unaware of the water damage under the flooring. The evidence does not support the conclusion that the water damage was

caused by the Debtor as a result of willful or malicious action. The scorched deck where a poorly positioned grill burned the wood decking was the result of bad judgment -- dangerously so perhaps -- but the Court cannot find it to be willful or malicious.

The Court finds the majority of the other damages to the mobile home are a consequence of slovenly living habits, negligence, and deplorable housekeeping. Some of the damage occurred as a result of ordinary wear and tear and evidence showed that some of the damage was actually the result of botched or failed attempts to repair the property. Some of the holes in the drywall were the result of a recliner rocking back into the wall, and damage to the blinds occurred as the result of an inadequately supervised child hitting them with a toy car. The Debtor's stepfather testified that he undertook to move the trash out of the house and repair some of the damaged walls. Should the Debtor have been more attuned to his need to maintain the property? Absolutely. The Rental Agreement put the burden on the Debtor to be responsible for damages caused by negligence and to maintain the property in a clean and sanitary condition. Pence's Exhibit 2, ¶10, 14. At best, there may be a contractual damage claim for a large portion of the damages under the lease, but as to a majority of the damage -- the evidence does not rise to the level of non-dischargeable conduct under § 523(a)(6).

However, damages related to the destruction of the bathroom vanity and the living room ceiling fan will be held non-dischargeable because the Debtor knew with "objective substantial certainty" his act would injure Pence's property. He testified he "busted them up" as a result of a fight with his ex-girlfriend. The Court finds the Debtor's destruction of the bathroom vanity was done deliberately, intentionally and with knowing disregard for Pence's rights and is therefore malicious because it caused injury without just cause or excuse. Further, a pillow was thrown at

the ceiling fan, breaking it.[4] Damages related to replacement of the ceiling fan are also non-dischargeable under § 523(a)(6). The Debtor clearly knew there would be harm as a consequence of that action. Pence's Exhibit 5 reflects the material cost for repairing the cabinets was $275.02 and the material cost for the ceiling fan was $63.12. Pence testified she paid $3,065.50 in labor costs to repair the master bathroom, but that included other costs including repairing the toilet, wall board, molding and trim. The Court finds that $1,000.00 of those labor costs to repair the master bathroom and install the ceiling fan should be non-dischargeable.

## Conclusion

For the foregoing reasons, this Court finds that the debts owed by the Debtor, Brian Carr, to the Plaintiff, Clara J. Reed Pence, are dischargeable in part and non-dischargeable in part. The sum of $1,338.14, including $275.02 for the bathroom cabinet materials, $63.12 for the ceiling fan, and $1,000.00 in labor costs, are declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

A separate Order shall be entered.

Decided this 17th day of October, 2017.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[4] This is not to say that the Debtor did not have at other times destructive tendencies and exhibit callous disregard for the rights of others. Page 64 of Pence's Exhibit 6 reflected that the Debtor did "donuts" in the yard of the mobile home after drinking and learning his live-in girlfriend had left the mobile home with their child and moved out of state. However, the yard damage was not something that Pence testified caused any monetary damage for which she sought compensation.